Roby Lee BARBER, Jr. aka Roby
Lee Barber, Appellant,

v.

The STATE of Texas, State.

No. 2–96–403–CR.

Court of Appeals of Texas,
Fort Worth.

March 4, 1999.

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Debra Ann Windsor, Lisa Amos, and Reed O'Connor, Asst. Dist. Attys., Fort Worth, for appellee.

PANEL S: CAYCE, C.J.; DAY, J., and FRANK MALONEY, J. (Sitting by Assignment)*

## OPINION

FRANK MALONEY, Justice.

Appellant, charged by indictment with the offense of murder, TEX. PENAL CODE ANN. § 19.02(b)(1) and (2), entered a plea of not

---

* Retired judge of the Texas Court of Criminal Appeals on assignment by the Chief Justice of the Texas Supreme Court.

guilty, was tried and found guilty by a jury of the offense of murder. Appellant pleaded "not true" to the repeat offender allegations in the indictment and the jury, after hearing evidence, assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice.

Appellant asserts five points on appeal:

Point One: The trial court, over his objection, allowed the State to elicit testimony about an inadmissible extraneous offense;

Point Two: The trial court erred in not allowing him to elicit testimony from State's witness Tracie Harps that the deceased's reputation for being a peaceable and law-abiding citizen was bad;

Point Three: The trial court erred in not allowing him to elicit testimony from defense witness Cassandra Williams that the deceased's reputation for being a peaceable and law-abiding citizen was bad;

Point Four: The trial court erred in allowing, over his objection, the introduction of autopsy photographs;

Point Five: The trial court erred in allowing, over his objection, the introduction of a statement allegedly made by the deceased.

Although appellant does not raise the issue of either legal or factual sufficiency, a brief statement of the facts is necessary in order to discuss the points raised.

The evidence at trial established that about two weeks prior to the killing of deceased, appellant (neighbor of the deceased) and the deceased engaged in an altercation at which time appellant threatened to kill the deceased.

The killing of the deceased occurred after the deceased knocked on appellant's door and apparently interrupted an attempted sexual assault by appellant upon Deborah Mason. Shortly thereafter, Deborah Mason left appellant's house and then engaged in a conversation with the deceased, who at that time was standing in front of appellant's

house and who informed her that it was he who had knocked on appellant's door because he had heard appellant "hitting" her. While she and the deceased were carrying on that conversation, appellant came over to the two of them and stated: "you think you are bad for jumping on me ... I don't forget nothing," at which time he began stabbing the deceased with a knife which, according to Deborah Mason, she had seen on top of appellant's television set in appellant's house just prior to the killing. Appellant surrendered to the police the day following the killing and made a statement to them, describing the area where he had thrown the knife that he had used in stabbing the deceased. Although he admitted killing the deceased, he stated that he had acted in self-defense.

The physician who performed the autopsy testified that at least 17 stab wounds were inflicted on the deceased; that he would characterize the attack as an overkill, delivered by one in a frenzy; and that the wounds were not consistent with wounds that would be inflicted by one acting in self-defense.

### POINT ONE

Appellant contends that evidence, admitted over his objection, dealing with the attempted sexual assault upon Deborah Mason by appellant constitutes reversible error.

The State contends that such evidence was admissible as same transaction contextual evidence and was also admissible on the issue of motive, i.e., to show his anger over the interruption of his sexual conduct resulting in sexual frustration, and to show appellant's intent and his possession of the murder weapon prior to the time of the murder.

Outside the presence of the jury, a hearing was conducted on the State's proffer of Deborah Mason's testimony to the effect that appellant hit her, made her disrobe, and told her he was going to have oral and anal sex with her.

Specifically, she testified that the appellant:

started hitting me and made me pull off my clothes and .... [h]e had a knife and it was opened on top of his television, ... he told me that he was going to get off, you know, I was going to have to do what he wanted to do and he wanted to have sex in my mouth and have sex in my rear and I asked him not to that—that he could have sex with me if he was going to take it, not, you know, to do it that way.

So he told me he was going to do it the way he wanted to do and he continued to hit me.

The specific objection by appellant's counsel at the hearing was:

I don't have any objection to the facts that she states about what happened outside. I think whatever happened—she claimed whatever happened inside the house is irrelevant and extraneous and not admissible.

. . . .

I just reurge to the Court that some time had passed between that alleged episode and the incident that occurred out on the driveway. I don't think they are related.

The State argued that it was same transaction contextual evidence and that it put the defendant in possession of the murder weapon moments before the murder occurred and also was admissible to show motive. Specifically, "the victim in this case interrupted the [d]efendant in the course of committing a rape and the [d]efendant was angry immediately at him at that time for interrupting. He was angry and perhaps sexually frustrated at that point—moment. That is when he charged out and confronted [the victim]."

The Court found that there was sufficient connection between the two events; therefore, the assault would be considered contextual and a part of the same episode and would show the context in which the ultimate event occurred.

We begin with *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990) (op. on reh'g), cited by both appellant and the State, which establishes critical guidelines in determining the admissibility of extraneous offenses under the Texas Rule of Criminal

Evidence, specifically 404(b)[1] and also explains the appropriate steps an accused must take to preserve error for appellate review.

*Montgomery* involved a prosecution for indecency with a child. During the trial of that case the State offered evidence to the effect that the defendant frequently appeared nude with an erection in front of his daughters. *See id.* at 375. The Court of Criminal Appeals initially affirmed the trial court's admission of that evidence. However, on the Court's own motion, the Court ordered the parties to rebrief and reargue the issue dealing with application of Rule 404(b) and the burden of persuasion on the probative value of such evidence being substantially outweighed by the danger of unfair prejudice. The Court also granted rehearing to determine the proper role of an appellate court's review of the trial court's decision, that the evidence does serve a permissible purpose under Rule 404(b), and that the evidence should not be excluded under Rule 403. *See id.* at 386.

The Court stated:

Illustrative of the permissible "purposes" to which evidence of "crimes, wrongs, or acts" may be put are "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Extraneous offense evidence that logically serves any of these purposes is "relevant" *beyond* its tendency "to prove the character of a person to show that he acted in conformity therewith." It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice...." On the other hand, if extraneous offense evidence is not "relevant" apart from supporting an inference of "character conformity," it is absolutely [sic] inadmissable under Rule 404(b).

. . . .

When a party attempts to adduce evidence of "other crimes, wrongs or acts," in order to preserve error on appeal, the opponent of that evidence must object in a timely fashion. Optimally, the opponent should object that such evidence is inadmissable under Rule 404(b). An objection that such evidence is not "relevant," or that it constitutes an "extraneous offense" or "extraneous misconduct," although not as precise as it could be, ought ordinarily to be sufficient under the circumstances to apprise the trial court of the nature of the complaint. Once that complaint is lodged, it is incumbent upon the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith."

*Id.* at 387 (citations omitted).

Rule 404(b) is neither mutually exclusive nor collectively exhaustive. *Cf. Morgan v. State,* 692 S.W.2d 877, 879 (Tex.Crim.App. 1985); *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972).

In reviewing the trial court's decision whether to admit evidence under Rule 404(b), the Court in *Montgomery* stated that the definition of relevance provided in Rule 401 is necessarily a broad one:

Whether particular evidence meets the definition will not always be cut and dried. Our adversarial system assigns that question to the trial judge, on the assumption that he has the best vantage from which to decide.... The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Montgomery,* 810 S.W.2d at 391.

 The trial court's ruling is measured on appeal by the abuse of discretion stan-

***

1. The Texas Rules of Criminal and Civil Evidence were combined into the Texas Rules of Evidence in March 1998, after the trial here. Even though this case is governed by former Tex.R.Crim. Evid. 404(b), we note that the new and old rule are substantively the same and the outcome would be the same under either rule. *Compare* Tex.R. Evid. 404(b) with Tex.R.Crim. Evid. 404(b) (Vernon 1997, revised 1998).

dard. But reviewing the trial court's judgment for abuse of discretion requires more of an appellate court than deciding that the trial judge did in fact conduct the required balancing and did not simply rule arbitrarily or capriciously. The appellate court must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. *See id.* at 390.

Previously in its opinion, the Court set out the relevant criteria to be utilized by the trial court:

> Factors that should go into the balancing are elaborated in [22˚ CHARLES ALAN WRIGHT & KENNETH A. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE §§ 5249 & 5250, at 545–51 (1978) ]. How compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence—in other words, its inherent probativeness—is certainly a factor. This is often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense. It is also a function of the strength of the proponent's evidence to show the opponent in fact committed the extraneous conduct. Another obvious factor is the potential the "other crimes, wrongs, or acts" have to impress the jury in some irrational but nevertheless indelible way. This is often a function of the nature of the misconduct. How much trial time does the proponent need to develop evidence of the extraneous misconduct, such that the attention of the factfinder will be diverted from the indicted offense? Finally, how great is the proponent's *"need"* for the extraneous transaction? This last inquiry breaks down into three subparts: Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute? When the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less

than it otherwise might in the probative-versus-prejudicial balance.

*Id.* at 389–90 (citations omitted).

As to the appellate function, the Court said:

> [W]e hold that where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. Relevant criteria gleaned from the authorities include, *inter alia*, that the ultimate issue was not seriously contested by the opponent; that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. Accordingly, when the record reveals one or more such relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then an appellate court should conclude that the trial court acted irrationally in failing to exclude it, and thus abused its discretion. The trial court has no "right" to be "wrong" if that means to admit evidence which appears to the appellate court, affording all due deference to the trial court's decision, nevertheless to be substantially more prejudicial than probative.

*Id.* at 392–93. In reversing the trial court, the *Montgomery* Court held that the evidence was inadmissible. *See id.* at 397.

Following *Montgomery*, the Court decided *Lockhart v. State*, 847 S.W.2d 568 (Tex.Crim. App.1992), *cert. denied*, 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993), a capital murder case involving the killing of a law enforcement officer. In that case, the Court of Criminal Appeals discussed relevancy in terms of transaction contextual evidence as to the admissibility of extraneous offense evi-

dence that concerned drug purchases, the operation of a motor vehicle with a stolen license plate, and evidence of a previous bank robbery and burglary. In affirming the conviction, the Court held that the evidence dealing with the attempted purchase of drugs and the operation of a car with stolen license plates was relevant to show why the police officer went to the defendant's motel room, and that the evidence involving the bank robbery and burglary was admitted in violation of Rule 404(b), but was harmless. *See id.* at 571, 573. The Court expressed its view concerning evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense as relevant evidence to explain the context of the offense for which the defendant is on trial. *See id.* at 571 (citing *Mayes v. State,* 816 S.W.2d 79, 86–87 n. 4 (Tex.Crim.App.1991) and *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim.App. 1986), *cert. denied,* 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987)). The evidence in *Lockhart* revealed that the defendant had stolen an automobile from an automobile salesman at gunpoint about four months before the offense and that he checked into a Beaumont motel room using the salesman's name. *See id.* The Florida license plate on the car was identified at trial as that stolen about two months before the offense from a vehicle belonging to a Florida witness. *Id.* The Court of Criminal Appeals stated:

> This evidence describes the circumstances surrounding Officer Hulsey's death and is necessary to the jury's comprehension of the offense. Officer Hulsey would not have gone to appellant's motel room had he not been involved in a car chase with appellant who was driving a stolen car with a stolen license plate. And, Officer Hulsey would not have been following the car driven by appellant had his suspicions not been aroused by what he saw concerning a suspected drug transaction.

> We hold that the evidence ... constituted contextual evidence indivisibly connected to this offense and therefore relevant under TEX.R.CRIM. EVID. 401. We also conclude that the possible prejudicial effect of the aforementioned evidence did not

substantially outweigh its probative value; therefore, [it] was admissible.

*Id.* at 571–72 (footnotes omitted).

Concerning other extraneous offenses, there was testimony as to a bank robbery and testimony from a teller who identified a $100 bill as bait money that she had given to the robber. *See id.* at 572. There was also testimony concerning the theft of a .357 magnum Smith and Wesson service revolver. *See id.* Holding that the testimony concerning the robbery and the burglary were inadmissible and constituted error in its admission, the Court stated:

> The State has not shown that the bank robbery was in any way connected to the instant offense, and although the stolen gun was the murder weapon, the fact that it was stolen was not necessary to the jury's comprehension of this offense; therefore, the bank robbery and the burglary are not "same transaction" contextual evidence. Rather, the evidence of the bank robbery and the burglary are akin to the general "background" contextual evidence that is unnecessary to the jury's comprehension of the charged offense. Such evidence is inadmissible unless it is authorized as an "other purpose" under rule 404(b).

*Id.* at 572–73 (citations omitted).

The Court examined whether the error contributed to the conviction or punishment or impacted the verdict in any way. The Court concluded that the only issue was whether appellant acted in self-defense and that even if the jury believed appellant's version of the facts, as a matter of law, the evidence did not constitute self-defense. *See id.* at 573. Citing *Harris v. State,* 790 S.W.2d 568, 584–88 (Tex.Crim.App.1989), the Court said:

> In light of appellant's admission to this offense, we are persuaded beyond a reasonable doubt that the error in admitting evidence of the aggravated bank robbery and the burglary did not contribute to appellant's conviction.

*Lockhart,* 847 S.W.2d at 573.

Appellant cites *Kiser v. State,* 893 S.W.2d 277, 284 (Tex.App.—Houston [1st Dist.] 1995,

pet. ref'd), and *Rodriguez v. State*, 871 S.W.2d 312, 316 (Tex.App.—Amarillo 1994, no pet.), for the proposition that if an extraneous offense is not necessary to explain the circumstances of the offense for which the appellant is convicted, its admission as same transaction contextual evidence is clearly error.

In *Kiser*, evidence that the defendant choked his former wife on the evening before an aggravated sexual assault on her friend was deemed erroneously admitted. *See Kiser*, 893 S.W.2d at 284. The defendant in that case asserted that while it was arguable that the substance of the argument between himself and his wife the previous night might have some bearing on the motive or intent to commit rape of the victim the following evening, the testimony concerning the physical act of grabbing, beating, or choking his ex-wife had no such relevance. *See id.* at 281. The State argued that the evidence was primarily admissible on the defendant's identity as the one who sexually assaulted and choked the victim. *See id.* The Court pointed out that to be admissible to prove identity: the extraneous offense and the charged offense *must* be similar to the point that "the accused's acts are earmarked as his handiwork; his 'signature' must be apparent from a comparison of circumstances in both cases." *Id.* at 281–82 (quoting *Beets v. State*, 767 S.W.2d 711, 740 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989)).

The First Court of Appeals, in discussing contextual evidence, said that:

> Even where extraneous offense evidence is not probative with respect to any fact of consequence to the determination of an action, it may still be relevant, and therefore admissible, if it creates a context from which the fact finder may more ably make judgments about those other facts which are of consequence to the determination of the action. The term "res gestae," used in the past to refer to contextual evidence, has come to subsume two different varieties of such evidence, and thus to obscure the distinction between them; those two varieties are (a) other offenses indivisibly connected with the offense charged, and (b) other, general background evidence helpful to the jurors' understanding of events at issue in the case before them. When reviewing the admission of evidence as contextual evidence, the preferred approach is now to distinguish between these two different varieties of contextual evidence by referring to the former as same transaction contextual evidence and to the latter as background contextual evidence.

*Id.* at 283 (citations omitted).

The State argued that this was contextual evidence because it was indivisibly connected with the charged offense. *See id.* In holding against the State, the Court stated:

> We perceive no such connection inseparably linking the two. The two, while not remote in time and place from each other, did not occur as part of an unbroken series of intermixed events.... There is no evidence of any events occurring thereafter to link that first series of events with the series of events that began when the complainant woke up and confronted the intruder assaulting her in her bedroom.

*Id.*

The Court went on to say that even if it were assumed arguendo to be contextual evidence, it remains inadmissible because it does not fall within the exception under Rule 404(b), that is only where it is necessary to the jury's understanding of the offense charged. *See id.* at 284.

> Here, it would not have been impracticable to describe the argument between appellant and [his ex-wife] and its subject matter and the magnitude of appellant's state of agitation that night, while omitting any specific description of appellant's choking or grabbing [his ex-wife]. With that omission, the remaining events still present a coherent account that would have made sense to the jury.

*Id.* The Court, however, held that it was harmless error. *See id.* at 285.

In *Rodriguez v. State*, the defendant was charged with murdering Sophie Whalin by striking her with an unknown object. *See* 871 S.W.2d at 313. The State adduced evidence that the deceased and her son, Charles Whalin, were killed by the defendant and

three other individuals. *See id.* at 313–14. For the purposes of showing appellant's intent, the State offered evidence, over objection, of the testimony of the autopsy doctor showing that he performed the autopsy of Charles Whalin and also three photographs of Charles Whalin, one in the trailer and the other two taken at the autopsy. *See id.* at 316. The defendant's objection was to the effect that this was evidence of another crime not relevant and substantially outweighed by the unfair prejudice. *See id.* at 315.

In finding the evidence inadmissible, the Amarillo Court of Appeals stated:

[A]ppellant was neither charged with, nor tried for, the murder of Charles Whalin; he was tried solely as a party to the murder of Sophie Whalin. Although the murder of Charles Whalin was a transactional part of, and indivisibly connected to, the murder of Sophie Whalin, thereby making the testimony of his murder admissible to explain the context of the offense for which appellant was on trial, neither the testimony concerning his autopsy, nor the autopsy photographs, had any logical relationship to the consequential fact of appellant's intent to murder Sophie Whalin. In view of the ample evidence to establish appellant's culpability for the murder of Sophie Whalin, ... the evidence would not have been less persuasive by the exclusion of [the autopsy doctor's] testimony and the photographs of Charles Whalin.

*Id.* at 316–17. The Court held that the testimony of the doctor and the photographs were merely cumulative of testimony that the jury heard without objection; therefore, the error, if any, was harmless. *See id.* at 317.

The appellant cites *Lum v. State,* 903 S.W.2d 365, 372 (Tex.App.—Texarkana 1995, pet. ref'd), and *Brown v. State,* 866 S.W.2d 675, 682 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd), for the principle that same transaction contextual evidence is admissible under the rule addressing the admissibility of other crimes, wrongs, or acts only when it is necessary to the jury's understanding of the offense on trial.

In *Lum v. State,* the defendant was charged with committing involuntary manslaughter utilizing a pickup truck. *See* 903 S.W.2d at 368. In the pickup truck there were some weapons which he attempted to convince paramedics, who were offering him medical assistance, to remove in order to conceal them. *See id.* at 370–71. The defendant objected on the basis that the evidence constituted an inadmissible extraneous offense of unlawfully carrying a weapon. *See id.* at 371 n. 6. On appeal, the State argued that extraneous offense evidence was admissible to show intent. The presence of the two loaded pistols in the truck cab showed the defendant's intent, that he either intended to kill the person he did kill with his truck or with the guns. *See id.* The Tenth Court of Appeals, in affirming the conviction, held that the evidence concerning the weapons had some relevance to show the context of the offense and that the trial court did not abuse its discretion in admitting the evidence. *See id.* at 372 (citing *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App. 1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994)).

In *Brown v. State,* the defendant was found guilty of the offense of delivery of cocaine in the amount of less than 28 grams. *See* 866 S.W.2d at 676. During the trial on examination by the defendant, a witness in an unresponsive answer volunteered evidence as to an extraneous offense dealing with a crack pipe that had traces of cocaine. *See id.* at 681. The Court, in explaining why this evidence could be admissible, even though unresponsive, stated:

There are two exceptions to [the] rule. First, if testimony is necessary to prove a contested element of the crime charged, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Second, if testimony shows the context in which the criminal act occurred, where the evidence is so inextricably tied to the commission of the offense that its introduction is reasonably necessary to allow the jury to realistically evaluate the evidence.

*Id.* at 682. The Court held that the evidence of cocaine in the pipe was not wholly unconnected with the delivery offense and, therefore, was admissible. *See id.*

The appellant cites *Alanis v. State,* 891 S.W.2d 737, 741 (Tex.App.—Houston [1st Dist.] 1994, pet. filed), for the principle that "same transaction contextual evidence" should only be admissible if the facts and circumstances of the offense would make little or no sense without it. In *Alanis,* the defendant was convicted of murder. *See id.* at 739. On appeal, he complained of testimony concerning possession of a firearm at the time of arrest as being an inadmissible extraneous offense. *See id.* at 740. The Court, although holding it error to have admitted the evidence, found that it was harmless. *See id.* at 741–42. In finding the error, the Court stated:

> The evidence pertaining to appellant's possession of a firearm constitutes same transaction contextual evidence rather than background contextual evidence, as such evidence is of acts, words, and conduct of appellant at the time of his arrest.
>
> Therefore, possession of a firearm is admissible only if necessary to understand the facts and circumstances of the present offense of murder. The State could have described the arrest without mentioning the firearm. Such omission would not have impaired or clouded the jury's understanding of the murder offense, nor would it have caused the evidence regarding the murder to appear incomplete.
>
> No evidence establishes any relationship between the murder weapon and the firearm found in possession of appellant at the time of his arrest. The State specifically offered the extraneous act of possession of a firearm to show appellant's propensity for dangerousness; however, appellant's reputation for peacefulness was not an issue before the trial court. There is no acceptable connection between the present offense and this extraneous act that would make the extraneous act admissible as same transaction contextual evidence.

*Id.* at 741 (citations omitted).

In *Camacho v. State,* the defendant was convicted of capital murder in the course of committing and attempting to commit burglary of a habitation, specifically a guest of the homeowner. *See* 864 S.W.2d at 526–27. During the trial, the State offered evidence that the defendant and his co-actors kidnaped and later murdered the homeowner's wife and son. *See id.* On appeal, the Court held that this evidence was admissible in the trial for murder of the homeowner's guest as same transaction contextual evidence, since the kidnaping evidence explained the context of events and evidence of the other murders and helped to establish the intent of the defendant during the burglary. *See id.* at 532 (citing *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App.1993), and *Mayes,* 816 S.W.2d at 86–87 n. 4).

Appellant here contends that the evidence admitted before the jury does not meet the criteria necessary to be admissible as same transaction contextual evidence. Appellant argues that the attempted aggravated sexual assault on Deborah Mason had no connection whatsoever to the murder offense other than it occurred first, that the injured parties in each offense are distinct and in no way related, and the attempted aggravated sexual assault committed against Deborah Mason was not necessary to clarify or explain any aspect or element of the murder of the deceased. According to appellant, the motive was not the interruption of the sexual attack by the deceased, but rather the prior assault against him with a baseball bat some two weeks earlier which he outlined in his written statement as being the motive for the killing. Appellant also points out that motive is not an element that the State is required to prove, citing *Williams v. State,* 840 S.W.2d 449, 460 (Tex.App.—Tyler 1991, pet. ref'd). The appellant also contends that admission of this evidence was error and it was harmful error, citing *Young v. State,* 837 S.W.2d 185, 188 (Tex.App.—Amarillo), *rev'd,* 843 S.W.2d 570 (Tex.Crim.App.1992).

The State maintains that the evidence was admissible as an exception to the general rule because the evidence was necessary to the jury's understanding of the offense on trial, citing *Rogers v. State,* 853 S.W.2d at 33. In *Rogers,* the defendant was charged in a single indictment with having committed two separate burglaries of a habitation and with possession of a controlled substance, methamphetamine weighing less than 28 grams. He was convicted of all three offenses in a

single trial. *See id.* at 31. The evidence showed that the defendant was arrested by the Houston Police Department at his home on a warrant in connection with the burglary of a habitation. The officers entered the house. They observed the defendant sitting on a couch, pushing a package down between the cushions of the couch. The package was recovered and it was later determined that it contained methamphetamine. *See id.* He was placed under arrest pursuant to the burglary arrest warrant, but at that time during a search of the house, marijuana was recovered from between a mattress and box springs in a rear bedroom. He admitted that the marijuana belonged to him. *See id.*

At trial, the State offered appellant's written confession in which he admitted using and selling marijuana and methamphetamine. *See id.* Appellant objected to that portion of the confession concerning possession of marijuana and his sale of small quantities of it. He also objected to that portion of the confession which stated that he was a methamphetamine dealer and sold quarter grams to finance his methamphetamine habit. *See id.* The State argued that evidence pertaining to the marijuana was res gestae of the offense and that appellant's statements regarding the methamphetamine were admissible to show motive to commit the burglaries. *See id.* The trial court overruled the objections and admitted the testimony concerning the recovery of the marijuana and appellant's oral statement that the marijuana belonged to him. *See id.*

The Court of Criminal Appeals first addressed the issue of whether or not that evidence was relevant under TEX.R.CRIM. EVID. 401 and admissible under Rule 404(b). *See Rogers,* 853 S.W.2d at 32 (citing *Mayes,* 816 S.W.2d at 84–87). The Court stated that the relevancy of the marijuana to the instant offenses was a close question. Evidence that appellant uses and sells one type of a controlled substance (marijuana) could arguably make it more probable that appellant would also be inclined to be in possession of another type of illegal substance (methamphetamine). *See Rogers,* 853 S.W.2d at 32. The Court stated:

While this Court is not necessarily convinced of the relevancy of the marijuana evidence under that argument, we will not "superimpose [our] own judgment as to relevance over that of the trial court." As we have recognized, "[r]easonable men may disagree whether in common experience a particular inference is available" and we will not disturb a trial court's ruling as long as it is within the zone of reasonable disagreement.

*Id.* at 32 (citations omitted). The Court went on to hold that it was within the zone of reasonable disagreement for the trial court to find that the evidence pertaining to the marijuana was relevant. *See id.* at 32–33.

The Court pointed out that the next step under *Mayes* is to determine whether the evidence at issue is admissible as an exception under Rule of Criminal Evidence 404(b). *See id.* at 33. It pointed out that although Rule 404(b) enumerates specific purposes for which other crimes, acts, or wrongs are admissible, the Rule's list of "other purposes" is "neither exclusive nor collectively exhaustive." *See id.* (citing *Montgomery,* 810 S.W.2d at 388). The Court pointed out that same transaction contextual evidence is admissible as an exception under Rule 404(b), where such evidence is necessary to the jury's understanding of the instant offense:

> Same transaction contextual evidence is deemed admissible as a so-called exception to the propensity rule where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." The reason for its admissibility "is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose." Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.

Necessity, then, is an "other purpose" for which same transaction contextual evi-

dence is admissible under Rule 404(b). Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted.

*Rogers,* 853 S.W.2d at 33 (quoting *Mayes,* 816 S.W.2d at 86–87 n. 4 (citations omitted)) (footnote omitted).

The Court went on to hold that although the possession of marijuana was same transaction contextual evidence, "the evidence concerning the marijuana was not 'necessary' to the jury's understanding of the offenses of burglary and possession of methamphetamine and was therefore not admissible as same transaction contextual evidence under Rule of Criminal Evidence 404(b)." *Id.* at 34.

The State here maintains that the evidence of the Mason assault was essential to the jury's understandings of the context and circumstances of the murder, citing *Rogers,* 853 S.W.2d at 33. Specifically, appellant claimed in his statement that deceased attacked him and that he responded by stabbing deceased because of his rage and out of self-defense, in light of deceased's previous assault on him. The appellant painted the deceased as the first aggressor and attempted to show his reactions were reasonable. The evidence of the attempted assault on Mason negated his attempted claim of self-defense and, more importantly, explained why appellant waited approximately two weeks to attack deceased after the previous altercation. Therefore, because the evidence was necessary for the jury to understand the context of the offense, and because it was impossible to explain the catalyst for the murder without eliciting Mason's testimony, the evidence constituted same transaction contextual evidence. *See* TEX.R.CRIM. EVID. 404(b); *Rogers,* 853 S.W.2d at 33; *Mayes,* 816 S.W.2d at 86.

The State also maintains that the evidence was relevant to appellant's intent, that it also showed that he possessed the murder weapon shortly before the murder, and that the attempted assault on Mason and stabbing of deceased was indivisible. In this case, Ma-

son's testimony was admissible to prove why appellant attacked deceased when he did and to prove that appellant was in possession of the murder weapon shortly before the murder occurred. Deborah Mason identified the knife, which was found at the location where appellant stated he threw it after the murder, as the knife that she had seen in appellant's apartment.

We agree with the State and find that the admission of the testimony complained of was not error. It was transaction contextual evidence, was necessary to explain the murder in that it was in part the reason for appellant's immediate action in killing the deceased, and was therefore admissible.

We overrule point one.

### POINTS TWO AND THREE

Appellant asserts that the trial court committed reversible error in not allowing him to illicit testimony from State's witness, Tracie Harps, and defense witness, Cassandra Williams, that the deceased's reputation for being a peaceable and law-abiding citizen was bad.

Outside the presence of the jury, counsel for the appellant elicited the following testimony from State's witness, Tracie Harps:

Q. Do you recall a run-in that Uncle Larry [deceased] had with Good Doctor?

A. Yes, which one?

Q. Well, let's talk about the one where he beat him with a chain. Do you recall that?

A. Yes, which time? There was several times with chains and bats and shovels and stuff.

. . . .

Q. All right. How many times are you personally aware of that Uncle Larry beat Good Doctor with a chain?

A. I can't—I can't count . . . I would say about four or five times, at least, at least with the chain anyway.

Q. What kind of a chain was it?

A. It was a big old heavy chain.

. . . .

Q. Okay. Are you personally aware of an incident where Uncle Larry pulled a lady out of a pickup truck and beat her up?

A. Yes.

Q. Do you know who that lady is?

A. Carolyn.

. . . .

Q. How many fights that you are personally aware of did R.J. have with Uncle Larry?

A. One.

Q. Just one and that was the baseball bat incident?

A. Right.

. . . .

Q. So what you are saying, then, is you have seen for yourself—you have actually seen Larry and Good Doctor going at it with a chain and a shovel?

A. Right.

Q. On two occasions?

A. Yeah.

. . . .

Q. Tracie, did you tell R.J. about Larry and Good Doctor fighting with a shovel and tow chain?

A. No.

Q. Did R.J.—well, did Good Doctor, in your presence when you were there, did Good Doctor ever tell R.J. what happened?

A. No, not in my presence.

Q. And the same question with Larry?

A. Yes. Uncle Larry told him.

Q. That he and Good Doctor fought with a tow chain and a shovel?

A. Yeah. He tells all the persons how stupid Good Doctor was.

. . . .

Q. But R.J. did know about Larry's violent behavior?

A. Larry's behavior was violent. His behavior was all talk.

Q. The tow chain, you don't consider that violent?

A. That is not violent. That is showing off, snatch it up and—

Q. Baseball bat?

A. The baseball bat is throwing it. How you violent with throwing a baseball bat? You violent if you swinging it. That is the coward way of throwing it.

The Court ruled that her testimony was inadmissible.

The defense counsel also called as a defense witness appellant's sister, Cassandra Williams, in order to establish that the deceased's reputation for being a peaceable and law abiding citizen was bad:

Q. Do you know a guy named Larry Davis?

A. Not personally. I met him one time.

. . . .

Q. And you're aware of what [appellant] is charged with here today?

A. Yes.

. . . .

Q. And you understand that that is the same Larry Davis that your brother is charged with killing?

A. Yes.

Q. Okay. Now, do you know a guy named Good Doctor?

A. Yes.

Q. Do you know his name?

A. All I know is his name is supposed to be Lawrence, but I don't know his last name.

. . . .

Q. Did you have a conversation with [Lawrence, the Good Doctor]?

A. Yes. He initiated the conversation and he spoke of Larry Davis, how he was violent and always picking on people that lived in the rooming house.

Q. Did he tell you ever any specific instances involving him and Larry Davis?

A. He said—yes, that he and the good Larry Davis had gotten into an altercation. At one point he had assaulted him with a chain. He had picked up a shovel and he said himself that he would have killed Larry with a shovel if he hadn't been stopped by someone else.

Q. Just so we are clear, who had the chain?

A. Larry Davis.

Q. And so Good Doctor had a shovel?

A. Right.

Q. And they were going at it?

A. Yes, sir.

Q. Did Good Doctor or Lawrence tell you of any other incidents involving he and Larry Davis?

A. No. That was the only one that I recall that he mentioned to me.

Q. Did Good Doctor—in this discussion, did he tell you that he had had conversations with your brother, Roby Barber, about Larry Davis and his violent behavior?

A. Yes. They just talked in general that he is always bothering people and he felt that—Larry felt if nobody fought him back that they were scared of him and he just continued to bully him.

The Court ruled the testimony inadmissible.

■ The appellant relies upon TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon Supp. 1999). The statute reads as follows:

(a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances göing on to show the condition of the mind of the accused at the time of the offense.

(b) In a prosecution for murder, if a defendant raises as a defense a justification provided by Section 9.31, 9.32, or 9.33, Penal Code, the defendant, in order to establish the defendant's reasonable belief that use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code; and

(2) relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion.

*Id.* Appellant correctly points out that TEX. CODE CRIM. PROC. ANN. art. 38.36 does not extend the rules of evidence to admit otherwise inadmissible testimony. *See Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App. 1986) (construing former TEX. PENAL CODE ANN. § 19.06, the predecessor to article 38.36(a)); *Henderson v. State,* 906 S.W.2d 589, 597 (Tex.App.—El Paso 1995, pet. ref'd) (same); *Richardson v. State,* 860 S.W.2d 214, 216 (Tex.App.—Fort Worth 1993, no pet.) (same).

■ In a murder prosecution the defendant's state of mind becomes relevant when self defense is an issue; the accused is then permitted to show the deceased's reputation for violence about which he knows or has been informed by others. *See Brown v. State,* 477 S.W.2d 617, 621 (Tex.Crim.App. 1972); *Mahaffey v. State,* 471 S.W.2d 801, 808–09 (Tex.Crim.App.1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1297, 31 L.Ed.2d 480 (1972); *Diaz v. State,* 722 S.W.2d 482, 489 (Tex.App.—San Antonio 1986), *vacated and remanded on other grounds, Diaz v. State,* 761 S.W.2d 1 (Tex.Crim.App.1988). Appellant argues that such evidence should be admissible pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.36 whether self defense has been legally raised or not. In his brief he concedes that "appellant raised no legal claim of self-defense at trial."

The State contends that since appellant conceded that he failed to raise a valid self-defense claim, article 38.36 is inapplicable; that article being designed to allow evidence to show defendant's state of mind on whether the defendant reasonably believed that the use of force or deadly force was immediately necessary. *See* TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon Supp.1999); *Purtell v. State,* 761 S.W.2d 360, 370 (Tex.Crim.App. 1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989). In the *Purtell* case, the evidence proffered by the defendant that the murder victim had confessed to prior homosexual conduct to a third party was held

to be inadmissible proof of character where the defendant made his claim that he was fending off the victim's homosexual advances without reference to the victim's character. *See Purtell,* 761 S.W.2d at 369–70. The Court of Criminal Appeals held that because the deceased's character was neither an essential element of the offense of capital murder nor an essential element of a defense to capital murder, the trial court properly excluded testimony concerning specific acts to prove the deceased's character. *See id.; see also Brown,* 477 S.W.2d at 621. Before article 38.36 would allow such evidence, the evidence must be relevant under TEX.R.CRIM. EVID. 401. There being no issue upon which the evidence would be relevant to appellant's guilt in the absence of a valid self-defense claim, the State argues that the proffered evidence is inadmissible and article 38.36 should not be expanded.

■ Factually, the State also argues that Tracie Harps's testimony was inadmissible because she testified that the Good Doctor was the aggressor, not the deceased. The testimony concerning the deceased beating Carolyn, while proffered to prove the deceased was the first aggressor, was inadmissible to prove appellant's state of mind because there was no testimony that the appellant knew of the incident. Testimony concerning the baseball bat was inadmissible hearsay because Harps did not see the incident. *See* TEX.R.CRIM. EVID. 801, 802.

We hold that the evidence proffered through Harps and Williams was not admissible and that the trial court did not abuse its discretion in denying the admissibility of the evidence. We overrule points two and three.

### POINT FOUR

Appellant asserts that the trial court abused its discretion in allowing the State to introduce autopsy photographs because he claims the only purpose for their admission was to inflame the minds of the jury.

The photographs in question involve eight autopsy pictures that were introduced during the testimony of Dr. Steven Puttoff, the medical examiner. State's exhibits number 20 through 27 were shown to the medical exam-

iner and he identified them as being photographs which were made of the deceased when the autopsy was being performed. State's exhibits 28, 29, 31, and 32 were prepared and identified by him as being a table delineating and listing each individual injury that he described during the autopsy and the numbers on the wounds correspond to the wounds portrayed in the photographs marked State's exhibits 20 through 27. He stated that exhibits 28 through 32 would help him explain to the jury exactly what wounds were on the body of the deceased. The State offered State's exhibits 20 through 27 and State's exhibits 28 through 32. Appellant's objection was that the photographs were more prejudicial than probative and they would inflame the jury against the defendant. The Court overruled the objection and photographs 20 through 27 were received in evidence.

The defendant claims that the photographs are repetitious and cumulative and their admission constituted an abuse of discretion, citing *Emery v. State,* 881 S.W.2d 702, 710–11 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Allridge v. State,* 850 S.W.2d 471, 494 (Tex.Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); and *Madden v. State,* 799 S.W.2d 683, 696 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).

The State argues that the photographs were offered to illustrate the medical examiner's testimony as to the seventeen wounds he found on the body of the deceased. The State contends that they were highly relevant and probative because they helped the jury assess "whether the wounds were delivered in self-defense, ... or whether they were inconsistent with a claim of self-defense and appeared to be 'overkill' that was delivered by someone in a 'frenzy' as the medical examiner found." The State cites *Penry v. State,* 903 S.W.2d 715, 751 (Tex.Crim.App.), *cert. denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

The recent case of *Rojas v. State,* 986 S.W.2d 241 (Tex.Crim.App. 1998) reasserts the test for admissibility set out in *Long v. State,* 823 S.W.2d 259, 272 (Tex.Crim.App.

1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992): to be admissible a photograph must possess some probative value and that it's probative value not be substantially outweighed by its inflammatory nature. *See Rojas,* at 249; *see also* TEX. R.CRIM. EVID. 403. The Court stated:

> Relevant factors in making this determination include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close up shots, whether the body is naked or clothed, the availability of other means of proof, and other circumstances unique to the individual case. (citations omitted)

*Rojas,* at 249.

■ Admissibility of photographs over challenges are within the sound discretion of the trial judge. *See Sonnier v. State,* 913 S.W.2d 511, 518 (Tex.Crim.App.1995). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy. *See Burdine v. State,* 719 S.W.2d 309, 316 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

■ In the case at bar, the photographs, State's Exhibits 20, 21, 22, 23, 24, 25, 26, and 27 are of the deceased, and show various stab-wounds on the neck, torso, and hand of the victim. None of the photographs are gruesome and, in fact, they appear as the State contends, "clinical in nature." The photographs portray only so much of the deceased's body as is necessary to illustrate the wounds that he received and support the medical examiner's testimony regarding the seventeen wounds and marks that he found on the deceased's body.

None of the cases cited by the appellant are contrary to the rule allowing admissibility of the photographs. We overrule point four.

### POINT FIVE

■ The appellant contends that the trial court committed reversible error by allowing the State, over defense's objection, to elicit from Deborah Mason a statement allegedly made by the deceased which constituted inadmissible, prejudicial hearsay.

The State was allowed, over objection by the appellant, to elicit from Deborah Mason on direct-examination that the deceased called her over to where he was standing and asked her if the appellant was trying to rape her and she told him "yes." She testified that the deceased told her that was "the reason why he knocked on the door. And I told him I didn't hear any knocks. He told me that he had heard him hitting me. That is the reason why he knocked."

The appellant argues that the statements made by the deceased were offered in evidence to prove the truth of the matter asserted, falling within the definition of TEX. R.CRIM. EVID. 801(d) and that the prosecution arguing that the evidence was admissible under 803(1) under present sense impression in effect admitted that the statement was being offered to prove the truth of the assertion. The appellant further argues that the error was harmful in that there was a reasonable possibility that the evidence complained of might have contributed to appellant's conviction, citing *White v. State,* 729 S.W.2d 737, 742 (Tex.Crim.App.1987); *Green v. State,* 727 S.W.2d 263, 267 (Tex.Crim.App. [Panel Op.] 1987); *Graham v. State,* 710 S.W.2d 588, 592–93 (Tex.Crim.App.1986). The appellant asserts that the testimony is hearsay, does not fall under the present sense impression exception, and "[i]t merely served as a reminder to the jury of the inadmissible extraneous offense the State was allowed to elicit earlier which is the subject of appellant's first point on appeal."

The State contends that the testimony was admissible as present sense impression of the victim under TEX.R.CRIM. EVID. 803(1). Rule 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is admissible as a "present sense impression." *See Rabbani v. State,* 847 S.W.2d 555, 560 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993).

The *Rabbani* case, a capital murder case, involved the killing of a convenience store attendant during an armed robbery. During

the punishment phase of the trial, testimony was admitted concerning a conversation that the witness had with Kabir about Shibli Khan, appellant's cohort in the armed robbery. A witness testified that while he was at Mr. Kabir's apartment, Khan came by for a visit of not more than two minutes, speaking with the witness and Kabir; Khan then left. The witness was asked whether or not he saw Kabir look anywhere and the witness stated over objection that Kabir, while looking outside through the window, said he saw Pintu (Rabbani) outside. This occurred on November 29. On November 30, the body of Kabir was found in his bathroom in the apartment, shot through the head. *See id.* at 559.

The Court, in its opinion in explaining present sense impression and the admissibility of such under Rule 803, stated:

> The rationale for the exception stems from the statement's contemporaneity, not its spontaneity; as one commentator has noted:

> > If a person observes some situation or happening which is not at all startling or shocking in its nature, nor actually producing excitement in the observer, the observer may yet have occasion to comment on what he sees (or learns from other senses) *at the very time that he is receiving the impression.* Such a comment, as to a situation then before the declarant, does not have the safeguard of impulse, emotion, or excitement, but there are other safeguards. In the first place, the report at the moment of the thing then seen, heard, etc., is safe from any error from defect of *memory* of the declarant. Secondly, there is little *or no time* for calculated misstatement, and thirdly, the statement will usually be made to another (the witness who reports it) who would have equal opportunities to observe and hence to check a misstatement. Consequently, it is believed that such comments, strictly limited to reports of *present* sense-impressions, have such exceptional reliability as to warrant their inclusion within the hearsay exception for Spontaneous Declarations.

*Id.* at 560 (quoting 1A RAY, TEXAS PRACTICE, LAW OF EVIDENCE § 916 at 158–59 (3d ed.1980)) (emphasis in orig.). The State contends that the *Rabbani* case is directly in point because the deceased's statement to Deborah Mason was a present sense impression describing an event he overheard—appellant "hitting" Deborah Mason—and that he knocked on appellant's door. He made the statement shortly after perceiving the event; only a few minutes had passed since Deborah Mason had left appellant's house.

We find that the statement was admissible as a present sense impression, an exception to the hearsay rule, and overrule point five.

There being no reversible error, the judgment of the trial court is affirmed.