

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00354-CR

ROBERT EARL BELL, JR.                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Robert Earl Bell, Jr. of aggravated robbery with a deadly weapon and assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In three issues, Appellant contends that the trial court abused its discretion by admitting the testimony of various witnesses.

---

[1]*See* Tex. R. App. P. 47.4.

Because we hold that the trial court did not reversibly err, we affirm the trial court's judgment.

**Statement of Facts**

The evidence shows that during the late evening hours of July 2, 2009 or the early morning hours of July 3, 2009, Appellant and Nakeia Cornelius met with Ashley Willis and Christopher Richardson in the parking lot of Willis's apartment complex to socialize. The couples' two cars were parked next to each other. Appellant, Willis, and Cornelius all knew each other; Richardson knew only Willis.

At some point, Cornelius expressed a desire for marijuana. Richardson pulled out his wallet, which everyone saw contained a "whole bunch of money," and gave her ten dollars for the purchase. Sometime after Cornelius returned to continue talking with the other three, she and Willis went to Willis's apartment to use the bathroom. The men were left standing near each other in the area between their two parked cars. They were standing "maybe two feet" or maybe "a little bit more than two feet" apart.

Appellant pulled a revolver from his waistband, pointed it at Richardson's chest, and told Richardson loudly, "Give it up." When Richardson realized that Appellant was serious, Richardson gave Appellant his wallet of money and all the money from his pockets. Afterward, Appellant opened his car door, sat down in his driver's seat, shot Richardson in the chest, and drove away.

Willis heard Richardson's cries for help and approached him. Richardson told her that Appellant had robbed and shot him. Appellant later called both Willis and Cornelius, warning both of them not to talk to the police.

Derrick Jones, Appellant's cousin, testified under subpoena that Appellant had told him that he had thrown a small handgun into the Fort Worth side of Lake Arlington. Jones further admitted that he reported that information to Detective Byron Stewart on July 30, 2009, less than a month after Richardson was shot.

During the punishment hearing, another cousin of Appellant's, Darren Bell, testified about two extraneous capital murders that he and Appellant committed about a week after Richardson was shot and identified Appellant as the shooter. Appellant robbed the two individuals at gunpoint and also issued the same command, "Give it up," to them before shooting them both in the chest.

**Willis's Testimony That Richardson Identified Appellant as Shooter**

In his first issue, Appellant contends that the trial court abused its discretion by admitting hearsay when Willis testified that Richardson told her that Appellant had shot him. But Richardson also testified that Appellant had shot him. A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.[2] Thus, even if the trial court did abuse its discretion by

---

[2]*Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905 (2011).

admitting Willis's testimony, which we do not hold, any error would be harmless. We overrule Appellant's first issue.

**Jones's Testimony That Appellant Threw a Handgun into a Lake**

In his second issue, Appellant contends that the trial court abused its discretion by admitting Jones's testimony that Appellant had thrown a gun into Lake Arlington because the State's notice was insufficient in that there was no showing that the gun had anything to do with this offense. Rule 404(b) of the rules of evidence provides,

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.[3]

The purpose of the rule's notice requirement is to prevent surprise and let the defendant know which offenses the State intends to offer at trial.[4] The rule requires "reasonable" notice,[5] and Appellant does not dispute that the State gave notice.

---

[3]Tex. R. Evid. 404(b); *see Allen v. State*, 202 S.W.3d 364, 367 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g).

[4]*Hernandez v. State*, 176 S.W.3d 821, 823 (Tex. Crim. App. 2005); *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001); *Allen*, 202 S.W.3d at 367.

[5]*Hayden*, 66 S.W.3d at 272; *Allen*, 202 S.W.3d at 367.

The State's "Notice of Intent to Introduce Evidence of Extraneous Offenses," served on Appellant approximately nine months before trial, provided among other things that the State intended to introduce evidence that

> [o]n or about the 7th day of July 2009, in Tarrant County, Texas, [Appellant] did then and there, knowing that an investigation or official proceeding was pending or in progress, . . . conceal[] a thing with the intent to impair its availability as evidence in the investigation, to wit: by throwing a firearm in [L]ake Arlington. [Appellant] told Derrick Demond Jones that he threw a small pistol in Lake Arlington on the Fort Worth side of the lake.

Given the timing and specificity of the notice, we cannot say that the State did not sufficiently link it and the handgun it references to the offense at hand.[6]

Appellant also challenges the admissibility of Jones's testimony about the handgun. Specifically, Appellant argues that for the evidence to be admissible, "the State had to show it was the same gun[;] otherwise it related to a different offense, but the State's notice did not link it to Richardson's offense and, indeed, could not link it to Richardson's offense." Appellant does not support this specific contention with any legal authority.

The indictment charged that Appellant had committed aggravated robbery with a deadly weapon, a firearm. In the State's opening statement, the prosecutor stated, "[Appellant's] own words identify him, because he told his cousin he ditched a pistol in Lake Arlington. And I'll tell you, that gun's never been found, and that gun's never going to be found. And that's real life."

---

[6]*See Hernandez*, 176 S.W.3d at 825.

The paramedic who treated Richardson at the scene after the shooting testified that Richardson told him that he had been shot with a handgun. Richardson testified that Appellant had shot him with a black revolver similar to State's Exhibit 9, another revolver admitted for demonstrative purposes only. Officer T. Stone testified that the apartment complex where Richardson was shot and robbed was only about three miles from Lake Arlington, that no casings were found at the scene, and that no casings would be expected to be found at a crime scene if the weapon used was a revolver.

Subpoenaed to testify by the State, Jones admitted that Appellant had told him that he had thrown a small handgun into the Fort Worth side of Lake Arlington. Jones further testified that he had reported that information to Detective Stewart on July 30, 2009, less than a month after Richardson was shot.

In the State's closing argument, the prosecutor contended,

His own cousin. And you know what? His demeanor, the—the fact that he wanted a break right in the middle of his testimony tells you he knew exactly what his testimony meant, and he was putting the nail in his cousin's coffin. "He told me he threw a small handgun in the Fort Worth side of Lake Arlington." And Officer Stone told you three miles away, Lake Arlington, the best place to hide evidence.

The jury charge at guilt-innocence contained the following,

You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even

6

then you may only consider the same in determining the credibility of the defendant, and for no other purpose.

Appellant did not testify before the jury. Appellant does not complain about the jury charge on guilt-innocence.

The State's theory of the case was that the gun Appellant threw in the lake was the same gun that he had used to shoot Richardson a few days earlier. The State did not allude to other crimes that Appellant might have committed with a handgun or to tampering with evidence or illegal dumping.

Appellant's theory of the case was that he was set up.

Based on the entire record, we conclude that Jones's testimony that Appellant had said that he had thrown a small handgun into a lake three miles from where Richardson was shot was not offered to prove character conformity but to connect Appellant to the instant offense, aggravated robbery with a deadly weapon.[7] That is, the evidence was offered on the issues of identity and

---

[7]*See Barber v. State*, 989 S.W.2d 822, 832 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding admissible testimony placing murder weapon in Barbert's possession before murder); *see also M'Bowe v. State*, No. 03-09-00160-CR, 2010 WL 2133909, at *4 (Tex. App.—Austin May 27, 2010, no pet.) (mem. op., not designated for publication) (holding admissible evidence that M'Bowe had weapon matching murder weapon description ten days before murder); *Quesada v. State*, No. 04-04-00438-CR, 2006 WL 1993762, at *2, *4 (Tex. App.—San Antonio July 19, 2006, pet. dism'd, untimely filed) (mem. op., not designated for publication) (holding that 57 shell casings found in Quesada's bedroom three months before the murder "were not admitted to prove the character of Quesada, but rather introduced to provide a connection to the murder weapon").

opportunity.[8] The trial court's decision was well within the zone of disagreement; the trial court therefore did not abuse its discretion by admitting the evidence.[9] We overrule Appellant's second issue.

**Darren Bell's Uncorroborated Accomplice Testimony at Punishment**

In his third issue, Appellant contends that the trial court abused its discretion by admitting in the punishment phase the uncorroborated accomplice testimony of Appellant's cousin Darren Bell that Appellant was the shooter in two extraneous capital murders they committed soon after the shooting of Richardson. As Appellant acknowledges, this court has previously held that the accomplice witness rule requiring corroboration does not apply to evidence admitted during the punishment phase.[10] We decline Appellant's invitation to revisit that holding, and we overrule his third issue.

**Conclusion**

Having overruled Appellant's three issues, we affirm the trial court's judgment.

---

[8]*See* Tex. R. Evid. 404(b) (allowing evidence of "other crimes, wrongs or acts" to be admitted as proof of, among other things, identity and opportunity).

[9]*See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

[10]*Kennedy v. State*, 193 S.W.3d 645, 661–62 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g) (en banc).

　　　　　　　　　　　　　　　/s/ Lee Ann Dauphinot
　　　　　　　　　　　　　　　LEE ANN DAUPHINOT
　　　　　　　　　　　　　　　JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 29, 2014