ACCEPTED
03-14-00235-CR
4202543
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/18/2015 5:19:27 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00235-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/18/2015 5:19:27 PM
JEFFREY D. KYLE
Clerk

_____

On Appeal from the 147th Judicial District Court of
Travis County, Texas
Cause Number D-1-DC-11-902003

_____

**JOE DEREK CARR, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____

*Counsel for Appellant*
*Joe Derek Carr*

**KRISTEN JERNIGAN**
ATTORNEY AT LAW
STATE BAR NUMBER 90001898
207 S. AUSTIN AVE.
GEORGETOWN, TEXAS 78626
(512) 904-0123
(512) 931-3650 (FAX)
Kristen@txcrimapp.com

**ORAL ARGUMENT REQUESTED**

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Joe Derek Carr

**Counsel for Appellant**:

John Carsey (at trial)
1100 Guadalupe
Austin, Texas 78701

Kristen Jernigan (on appeal)
207 S. Austin Ave.
Georgetown, Texas 78626

**Counsel for Appellee, The State of Texas:**

Rosemary Lehmberg
Travis County District Attorney

Amy Meredith
J.D. Castro
Assistant District Attorneys
509 W. 11th Street
Austin, Texas 78701

**Trial Court Judge:**

The Honorable Clifford Brown

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1. The trial court abused its discretion in allowing hearsay testimony regarding Appellant's alleged bad character and specific instances of that alleged conduct.

2. The evidence is insufficient to show Appellant committed the offense of murder.

3. The trial court abused its discretion in excluding admissible and proper impeachment evidence.

4. The trial court abused its discretion in allowing the admission of a recorded phone call which was not properly authenticated.

5. The content of a recorded phone call between Appellant and his mother, which was improperly admitted at trial, violated Appellant's right against self-incrimination.

6.	The trial court abused its discretion in denying Appellant's Motion for New Trial.

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# INDEX OF AUTHORITIES

## CASES

*Angel v. State*, 627 S.W.2d 426 (Tex. Crim. App. 1982) . . . . . . . . . . . . . . . . . . . .26

*Barber v. State*, 989 S.W.2d 822 (Tex. App.--Fort Worth 1999). . . . . . . . . . . . . 12

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9, 27

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . .14, 17

*Buhl v. State*, 960 S.W.2d 927 (Tex. App.--Waco 1998) . . . . . . . . . . . . . . . . . . .12

*Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006),
     *cert. denied*, 127 S. Ct. 1289 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hacker v. State*, 389 S.W.3d 860 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . .17

*Henderson v. State*, 906 S.W.2d 589 (Tex. App.--El Paso 1995) . . . . . . . . . . . . . 12

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . 16

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981) . . . . . . . . . . . . . . . . . .26

*Jones v. State*, 711 S.W.2d 35 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . .27, 28

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) . . . . . . . . . . . .13, 14, 22, 25

*Kotteakos v. United States*, 328 U.S. 750 (1946) . . . . . . . . . . . . . . . . . . . .13, 22, 25

*Lewis v. State*, 911 S.W.2d 1 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . .27

*Losada v. State*, 721 S.W.2d 305 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . .26

*Malloy v. Hogan*, 378 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Megan Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013) . . . . . . . . . . . . 16

*Montgomery v. State*, 810 S.W.2d 372
(Tex. Crim. App. 1990) . . . . . . . . . . . . . .10, 13, 18, 21, 22, 24

*Richard Winfrey v. State,* 323 S.W.3d 875 (Tex. Crim. App. 2010) . . . . . . . . . . . 16

*Richardson v. State,* 860 S.W.2d 214 (Tex. App.--Fort Worth 1993) . . . . . . . . . 12

*Stobaugh v. State,* 421 S.W.3d 787 (Tex. App.—Fort Worth, 2014) . . . . . . . .16, 17

*Werner v. State,* 711 S.W.2d 639 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . 12

**STATUTES AND RULES**

TEX. CODE CRIM. PRO. Art. 38.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

TEX. CONST. Art. I, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

TEX. PENAL CODE § 19.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. R. APP. 44.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 21, 25

TEX. R. EVID. 607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

TEX. R. EVID. 608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

TEX. R. EVID. 611(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. R. EVID. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. R. EVID. 803(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

TEX. R. EVID. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 24

U.S. CONST. AMEND. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument in this case.

**No. 03-14-00235-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 147th Judicial District Court of
Travis County, Texas
Cause Number D-1-DC-11-902003

_____

**JOE DEREK CARR, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____


**STATEMENT OF THE CASE**

On February 11, 2015, a jury found Appellant guilty of the offense of murder as alleged in the indictment. (CR: 103). The Court assessed punishment of sixty years in prison. (CR: 106). Appellant filed a Motion for New Trial on March 12, 2014. (CR: 115). The Motion was denied by the trial court on April 10, 2014. (RR10: 24). Appellant timely filed Notice of Appeal the same date, on April 10, 2014. (CR: 128). This appeal results.

1

## STATEMENT OF FACTS

At trial, Chris Kashimba testified that he was the victim, Veronica Navarro's ex-boyfriend. (RR3: 88-90, 92, 96). On June 25, 2014, Navarro spent the night at Kashmiba's house and left the next morning. (RR3: 107). Kashimba told the jury that on June 27, 2011, he saw Navarro again after she had attended a job interview. (RR3: 101). According to Kashimba, during their meeting, Navarro indicated that she wanted to break up with her boyfriend, Appellant, and return to her relationship with Kashimba. (RR3: 102, 112). Kashimba did not hear from Navarro again and so he assumed she had reconciled with Appellant. (RR3: 115).

Jeff Allbritton, a Travis County park police officer, told the jury that on July 6, 2011, he responded to a call of a possible deceased person at Lake Travis. (RR3: 192). Allbritton was directed to an area on the lake and observed a body wrapped in a tent. (RR3: 202). It appeared the body was anchored to something, but he and other law enforcement officers removed it. (RR3: 205-06).

Renee Luna, a Travis County Sheriff's Department Crime Scene Specialist, stated that when Navarro's body was pulled from the water, she observed that tied to the tent wrapping her body was a cinder block and paint cans. (RR3: 233). One of the paint cans had a sticker which indicated it was Olympia brand paint and was purchased from a Lowe's store in Hutto in July of 2010. (RR3: 236). On

2

cross-examination, Luna admitted that she collected seventeen pieces of evidence at the crime scene, but did not test any of them. (RR3: 254). She agreed further that she did not know whether any of those items contained DNA because they were not tested. (RR3: 254). Luna was later re-called and stated that she and other law enforcement officers searched Appellant's home and found an empty tent bag. (RR5: 41-43). Luna indicated that the tent bag and the tent found wrapped around Navarro's body had the same product number. (RR5: 43). On cross-examination, Luna admitted that any tent of the same make and model would have the same labeling. (RR5: 145).

Sylvia Leal, a detective with the Travis County Sheriff's Office, testified that she participated in examining the crime scene, removing Navarro's body, and attending Navarro's autopsy. (RR4: 135-41). At the time of the autopsy, Leal did not know Navarro's identity, but when she later learned Navarro was the deceased, she notified her family. (RR4: 138). When she spoke with the family, she learned Navarro had been dating Appellant, a Pedernales firefighter. (RR4: 140). Leal attempted to locate Appellant but was not able to, so she contacted the United States Marshall's Office. (RR4: 141). Leal was later re-called and stated that she executed a search warrant on Appellant's home, but did not follow usual procedure because she learned Appellant was being held at the Canadian border.

3

(RR4: 223-24).

Dr. Satish Chundru, a deputy medical examiner at the Travis County Medical Examiner's Office, testified that he performed the autopsy on Navarro's body. (RR4: 158). The State offered Exhibits 54-59 and 61-63 which were photographs of Navarro's dead body. (RR4: 159). Chundru explained that he could not determine the time of death. (RR4: 166). He estimated that Navarro's body had been in the water for a few days, but could not say exactly how long. (RR4: 166). Chundru stated that there were no obvious signs of injury on Navarro's body and that he only came to the conclusion that Navarro died from a lack of oxygen to the brain because there were no other indications to conclude otherwise. (RR4: 187). Chundru could not determine how oxygen was deprived. (RR4: 190-91). On cross-examination, Chundru acknowledged that if someone was being deprived of oxygen, there would be signs of a struggle and DNA underneath the victim's fingernails. (RR4: 194). Chundru admitted that his determination of Navarro's cause of death was because of how the body was found, not based on his examination. (RR4: 204). Chundru admitted further that it is possible for an adult to succumb to Sudden Arrythmic Death Syndrome. (RR4: 209-10). In fact, nearly 2,500 people in the United States die of the syndrome every year. (RR4: 210-11). Chundru concluded his testimony by

4

agreeing that he had no physical evidence to support his finding of asphyxia as the cause of Navarro's death. (RR4: 216).

Heather Dragna, a forensic scientist in the DNA section at the Texas Department of Public Saftey, testified that several items collected in this case were tested but were negative for any probative evidence. (RR5: 91-94, 98). A glove was tested and was positive for blood, but Navarro was excluded as a contributor to the blood. (RR5: 96). The only other "positive" results for blood were from Navarro's SANE exam which showed she was the only contributor to the samples. (RR5: 98). As for all of the other items tested, Dragna again confirmed that "everything else was negative." (RR5: 98).

Kenneth Crawford, a trash bag examiner with the Texas Department of Public Safety, testified that there was no evidence that a trash bag collected from inside the tent containing Navarro's body and a trash bag found at Appellant's home were previously connected. (RR5: 153). Crawford could not say which company manufactured either trash bag and could not associate one with the other. (RR5: 155). On cross-examination, Crawford acknowledged that the two bags could have come from separate boxes "anywhere in the world." (RR5: 156).

Melissa Valadez, a trace evidence specialist with the Texas Department of Public Safety, testified that she examined a sheet collected from Appellant's house

5

and tape lifts from Appellant's car but did not find any fibers consistent with fibers from the rope or tent found with Navarro's body. (RR5: 165-67). Valadez also compared the fibers from the tent bag found at Appellant's home with the tent wrapped around Navarro's body and determined that the fibers were inconsistent. (RR5: 167). Valadez determined that the tent found with Navarro's body did not come from the tent bag found at Appellant's house. (RR5: 167). Valadez ran tests on a piece of drywall to compare the paint on it with the paint in the cans found with Navarro's body. (RR5: 187). While Valadez found the paint to be similar, and that it could have come from Appellant's home, she noted that it could have also come from "any other source with similar characteristics." (RR5: 187).

During Appellant's case-in-chief, he recalled Detective Leal who stated that it was her theory that in the days and weeks leading up to Navarro's disappearance, she was scared of Appellant and was planning on leaving him. (RR8: 26-27). Leal was then shown several facebook posts from Navarro. (RR8: 28). One post was dated June 19, 2011, in which Navarro posted about what a loving father Appellant was and how much she loved him. (RR8: 28). Another post from the same date indicated that Navarro hated to see Appellant leave for work. (RR8: 28). Also on the same date, Navarro updated her current city to Spicewood, Texas, where she had just moved with Appellant. (RR8: 29). On June 22, 2011,

6

Navarro posted that she had just put Appellant's son down for a nap so she had time to plant her mini azaleas, which she loved. (RR8: 30). On June 26, 2011, Navarro posted that Appellant was her fiancé. (RR8: 31).

At the hearing on Appellant's Motion for New Trial, it was undisputed that an investigating officer committed a *Brady*[1] violation by failing to turn over surveillance videotapes from a Walmart store which showed Appellant and Navarro shopping together the day before she disappeared. (RR10: 10-18). These tapes, admitted as Exhibits 339, 339(b), 339(c), and 341 refuted the theory presented by the State that Navarro was frightened by Appellant and was planning to leave him. (RR10: 18). Despite the arguments made by counsel that these tapes would have affected the outcome of Appellant's trial, the Court denied Appellant's Motion for New Trial. (RR10: 26).

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

## ISSUES PRESENTED

1. The trial court abused its discretion in allowing hearsay testimony regarding Appellant's alleged bad character and specific instances of that alleged conduct.

2. The evidence is insufficient to show Appellant committed the offense of murder.

3. The trial court abused its discretion in excluding admissible and proper impeachment evidence.

4. The trial court abused its discretion in allowing the admission of a recorded phone call which was not properly authenticated.

5. The content of a recorded phone call between Appellant and his mother, which was improperly admitted at trial, violated Appellant's right against self-incrimination.

6. The trial court abused its discretion in denying Appellant's Motion for New Trial.

## SUMMARY OF THE ARGUMENT

Appellant's first point of error should be sustained because the trial court abused its discretion in allowing hearsay testimony regarding Appellant's alleged bad character and specific instances of that alleged conduct which only served to inflame the jury. Appellant's second point of error should be sustained because the evidence is insufficient to show Appellant committed the offense of murder where the State failed to prove a specific act that caused Navarro's death or even the cause of death itself. Appellant's third point of error should be sustained

8

because the trial court abused its discretion in excluding admissible and proper impeachment evidence which would have shown a crucial witness for the State, Kashimba, was untruthful. Appellant's fourth point of error should be sustained because the trial court abused its discretion in allowing the admission of a recorded phone call which was not properly authenticated. Appellant's fifth point of error should be sustained because the content of a recorded phone call between Appellant and his mother, which was improperly admitted at trial, violated Appellant's right against self-incrimination. Appellant's sixth point of error should be sustained because the trial court abused its discretion in denying Appellant's Motion for New Trial where it was shown competent and material evidence was withheld from Appellant in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ARGUMENT & AUTHORITIES

**I.**      ***The trial court abused its discretion in allowing hearsay testimony regarding Appellant's alleged bad character and specific instances of that alleged conduct.***

The trial court abused its discretion in allowing hearsay testimony of Appellant's alleged bad character in violation of Texas Rules of Evidence 403, 404(b), and 802. A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; but rather, whether the court acted without reference to any guiding rules or principles. *Id.*

At trial, Manuela Navarro, Navarro's cousin, told the jury that Navarro told her Appellant "would never let her do anything and would never let her go anywhere." (RR3: 56).[2] Chris Kashimba, Navarro's ex-boyfriend, stated that Navarro told him that she was afraid of Appellant and "didn't like his attitude." (RR3: 93).[3] Kashimba also stated that Navarro told him that Appellant would

---

[2]   Appellant preserved error by objecting and receiving a running objection to this testimony. (RR3: 50).

[3]   Appellant preserved error by objecting and receiving a running objection to this testimony. (RR3: 93).

"scream or throw things, throwed little fits, temper tantrums." (RR3: 94). In addition, Kashimba was allowed to testify that Navarro told him Appellant gave her bruises, "drank a lot," and became "more aggressive." (RR3: 94-95). Kashimba told the jury that Navarro told him that she planned to get a job and break up with Appellant. (RR3: 102). When the prosecutor asked AnnaKaren Perez, Navarro's cousin, whether Navarro had expressed any concerns about her relationship with Appellant, Appellant objected and the Court interjected, outside the presence of the jury:

THE COURT: To this point I've allowed you to have some latitude with the hearsay going to her state of mind and so forth, but it's not just a blanket allowance to just have a rambling hearsay. I mean, you have to be very specific with your questions as they relate to her state of mind and the relationship. All right? (RR3: 154-55).

Perez was then allowed to testify, over Appellant's objection, that Navarro said her relationship with Appellant was not what she expected and that she had concerns about moving in with Appellant. (RR3: 156).

Appellant anticipates that the State will argue, as it did at trial, that the above, complained-of testimony is evidence regarding the relationship between

11

Appellant and Navarro and is admissible pursuant to Texas Code of Criminal Procedure Article 38.36. Even if this is true, the Rules of Evidence still apply and the evidence must fall under an exception to the hearsay rule. *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006), *cert. denied*, 127 S. Ct. 1289 (2007). Article 38.36 does not extend the rules of evidence to admit otherwise inadmissible testimony. *See Barber v. State*, 989 S.W.2d 822, 834 (Tex. App.--Fort Worth 1999), *citing Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); *Henderson v. State*, 906 S.W.2d 589, 597 (Tex. App.--El Paso 1995); *Richardson v. State*, 860 S.W.2d 214, 216 (Tex. App.--Fort Worth 1993); *Buhl v. State*, 960 S.W.2d 927, 932 (Tex. App.--Waco 1998).

Texas Rule of Evidence 802 instructs, "Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX. R. EVID. 802.

At trial, the State argued that all of the testimony above fell under Rule of Evidence 803(3) as an exception to the hearsay rule. Texas Rule of Evidence 803(3) states, "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief

12

to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." TEX. R. EVID. 803(3).

However, the testimony elicited at trial as described above did not reflect Navarro's then existing mental condition, but rather, reflected bad acts on Appellant's part such as drinking in excess, becoming aggressive, and throwing temper tantrums. It also reflected Appellant's alleged attempts to control Navarro by telling her what to do and where she could go. Again, these are not reflections of Navarro's then existing mental condition, but rather, attempts by the State to paint Appellant as an unlikeable and threatening person. As such, the trial court erred in allowing this testimony into evidence. *See Montgomery*, 810 S.W.2d at 391.

Appellant was harmed by the admission of this evidence because his substantial rights, including his right to a fair trial, were affected by the trial court's ruling. TEX. R. APP. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776 (1946). This "evidence," which was admitted in violation of Texas Rule of Evidence 802, only served to inflame the jury and bias the jurors against Appellant. In a case in which the manner of Navarro's death

13

was never proven, or that Appellant committed an act which caused Navarro's death, as discussed below, this evidence surely influenced the jury's verdict. *See King v. State*, 953 S.W.2d at 271. Accordingly, Appellant's first point of error should be sustained.

## II. *The evidence is insufficient to show Appellant committed the offense of murder.*

Appellant's second point of error should be sustained because the evidence is insufficient to show Appellant committed the offense of murder. The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

In order to prove its case beyond a reasonable doubt, the State was required to show that Appellant intentionally or knowingly caused Navarro's death. TEX. PENAL CODE § 19.02. However, in this case, Navarro's cause of death was never determined. The deputy medical examiner, Dr. Chundru stated that there were no

14

obvious signs of injury on Navarro's body and that he only came to the conclusion that Navarro died from a lack of oxygen to the brain because there were no other indications to conclude otherwise. (RR4: 187). Chundru could not determine how oxygen was deprived. (RR4: 190-91). On cross-examination, Chundru acknowledged that if someone was being deprived of oxygen, there would be signs of a struggle and DNA underneath the victim's fingernails. (RR4: 194). Chundru admitted that his determination of Navarro's cause of death was because of how the body was found, not based on his examination. (RR4: 204). In fact, Chundru agreed that he had no physical evidence to support his finding of asphyxia as the cause of Navarro's death. (RR4: 216).

In addition, Dragna, testified that several items collected in this case were tested but were negative for any probative evidence. (RR5: 91-94, 98). Crawford testified that there was no evidence that a trash bag collected from inside the tent containing Navarro's body and a trash bag found at Appellant's home were previously connected. (RR5: 153). Valadez testified that she examined a sheet collected from Appellant's house and tape lifts from Appellant's car but did not find any fibers consistent with fibers from the rope or tent found with Navarro's body. (RR5: 165-67). Valadez also compared the fibers from the tent bag found at Appellant's home with the tent wrapped around Navarro's body and determined

15

that the fibers were inconsistent.    (RR5: 167).    Valadez determined that the tent found with Navarro's body did not come from the tent bag found at Appellant's house.    (RR5: 167).    Valadez ran tests on a piece of drywall to compare the paint on it with the paint in the cans found with Navarro's body.    (RR5: 187).    While Valadez found the paint to be similar, and that it could have come from Appellant's home, she noted that it could have also come from "any other source with similar characteristics."    (RR5: 187).

It is well-settled that circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "And while juries are permitted to draw multiple reasonable inferences, as long as each inference is supported by the evidence presented at trial, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions."  *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth, 2014), *citing Megan Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).    "If the evidence presented at trial raises 'only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'"  *Id., citing Richard Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

In *Stobaugh*, the Second Court of Appeals found the evidence insufficient to support the defendant's conviction for murder where the State failed to prove a specific act which caused the victim's death. *Id*. at 864-65. Further, the Court held that motive and opportunity alone are not enough to support a murder conviction. *Id*. at 865.

Such is the case here. The only "evidence" presented by the State was testimony from Kashimba that Navarro wanted to break up with Appellant and therefore, he had a motive to kill her, and suspicions by law enforcement that Appellant was connected to Navarro's death. However, while it is true that evidence of motive and opportunity helps link a defendant to wrongful conduct or is supportive of other evidence of such conduct, without evidence that wrongful conduct has occurred, there is nothing for motive and opportunity evidence to link the defendant to. *Hacker v. State*, 389 S.W.3d 860, 871 (Tex. Crim. App. 2013).

In sum, there is absolutely no evidence that Appellant caused Navarro's death. Therefore, no rational trier of fact could have found Appellant guilty based on the evidence presented in this case. *See Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. Accordingly, Appellant's second point of error should be sustained.

17

**III.** *The trial court abused its discretion in excluding admissible and proper impeachment evidence.*

Appellant's third point of error should be sustained because the trial court erred in excluding evidence which would have properly impeached Kashimba's credibility. Specifically, the trial court erred in excluding evidence that Kashimba and Navarro fought often, in direct contrast to his affirmative representation on direct examination. A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; but rather, whether the court acted without reference to any guiding rules or principles. *Id.*

On direct examination, Kashimba testified as follows:

THE PROSECUTOR:   Okay. When you guys were together, did you have a fight?

KASHIMBA:   No, ma'am. It might have been a discussion. I mean, we never fought. We never threw things or blew things out of portion. We were civilized people and talked like human beings. (RR3: 96).

18

Outside the presence of the jury, and prior to commencing cross-examination, Defense Counsel informed the Court that he wished to impeach Kashimba, who previously testified that he and Navarro never fought, with three incidents in which law enforcement was called as a result of domestic disturbances between Kashimba and Navarro. Specifically, Counsel referenced the following:

DEFENSE COUNSEL: Your Honor, there are three Travis County Sheriff's Office case reports. One is dated February 26th, 2010, in which two officers responded to a report that there was a male chasing a female down the street. That ended up to be Chris Kashimba chasing Veronica Navarro down the street. The investigation revealed that Navarro had told Kashimba that she was breaking off the relationship and that he became extremely upset and chased her down the street. She got away. There was no physical violence, but there was this incident. There is another Travis County report dated October 24th of 2008 in which a deputy was dispatched to a family disturbance on

19

Kings Court. It ended up that it was again Kashimba and Navarro, and he was told by Navarro that she was living with Kashimba's family and that the two of them had gotten into an argument and the police were called. And then on September 22nd, 2008, there was a sheriff's department report concerning a theft of a laptop from Hyde Park Baptist Church. A deputy reports that the employees were identified as Navarro and Kashimba and then the deputy was present when they were fired. This report says that it was learned that Navarro and Kashimba had stolen a laptop from the church after a report had been filed with the Austin Police Department. And those three items, based on his testimony, I believe I should be able to inquire about. (RR3: 120-21).

The trial court denied Counsel's request. (RR3: 123).

Texas Rule of Evidence 607 allows for the impeachment of a witness. TEX. R. EVID. 607. It instructs: "The credibility of a witness may be attacked by

20

any party, including the party calling the witness." TEX. R. EVID. 607. Likewise, Texas Rule of Evidence 611(b) provides: "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility." TEX. R. EVID. 611(b). Texas Rule of Evidence 608 governs the admissibility of impeachment evidence and forbids the use of specific instances of conduct to impeach a witness's credibility except to "expose bias or interest, rebut affirmative representations made on direct examination, or to demonstrate a lack of capacity." TEX. R. EVID. 608; *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997).

The evidence of the fights between Kashimba and Navarro, which were serious enough for law enforcement to be called, was admissible to impeach Kashimba's credibility, and specifically, his affirmative representations made on direct examination that he and Navarro "never fought." TEX. R. EVID. 608; *Lagrone*, 942 S.W.2d at 613. As such, the trial court abused its discretion in excluding this evidence. *Montgomery*, 810 S.W.2d at 391.

Appellant was harmed by the exclusion of this evidence because his substantial rights, including his right to a fair trial, were affected by the trial court's ruling. TEX. R. APP. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."

21

*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776 (1946). The only "evidence" presented at trial was Kashimba's testimony that Navarro was planning on leaving Appellant, thus establishing a motive for killing her. Had the jury been made aware that Kashimba was not, in fact, truthful, that fact would most certainly have affected the jury's verdict. *See King v. State*, 953 S.W.2d at 271. Accordingly, Appellant's third point of error should be sustained.

**IV.** **The trial court abused its discretion in allowing the admission of a recorded phone call which was not properly authenticated.**

Appellant's fourth point of error should be sustained because the trial court allowed the admission of a recorded phone call without proper authentication. A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; but rather, whether the court acted without reference to any guiding rules or principles. *Id.*

During the testimony of Chief Osvold, of the Pembina County Jail where Appellant was held until Travis County authorities transported him to Texas, the

State offered a recorded phone call between Appellant and his mother.   Appellant challenged the authentication of that phone call and established the following:

DEFENSE COUNSEL:   Chief Osvold, did you personally have anything to do with this phone call at the time it was made?

OSVOLD:   I had nothing to do with any of the phone calls at the time they were made.

DEFENSE COUNSEL:   So you did not -- at the time it was made, you did not check to see if the system was operating properly at the time, correct?

OSVOLD:   No, correct.

DEFENSE COUNSEL:   And you didn't push the button that records the call, correct?

OSVOLD:   Correct.

DEFENSE COUNSEL:   In fact, you didn't even know the call was being made when it was made, correct?

OSVOLD:   Correct.   (RR7: 82-84).

Appellant objected that the tape was not properly authenticated under Rule of Evidence 901, that the contents of the tape were not relevant, and that the admission of the tape violated Appellant's right against self-incrimination.   (RR7:

23

76-77, 85-86). The trial court overruled Appellant's objections. (RR7: 77-78, 87). On the tape, Appellant's mother asks Appellant whether or not he killed Navarro and he remains silent. (RR7: 77).

Texas Rule of Evidence 901 requires authentication that a voice, whether heard firsthand or through mechanical or electronic transmission or recording, through opinion testimony, is the voice of the alleged speaker. TEX. R. EVID. 901(b)(5). Further, Rule 901 telephone conversations must be authenticated by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if: (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called; or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone. TEX. R. EVID. 901(b)(6).

None of this evidence which was required to show authenticity, was presented and therefore, authentication was not established. *See* TEX. R. EVID. 901. Therefore, the trial court abused its discretion in allowing the recorded phone call into evidence. *Montgomery*, 810 S.W.2d at 391.

Appellant was harmed by the admission of this evidence because his substantial rights, including his right to a fair trial, were affected by the trial court's

ruling. TEX. R. APP. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776 (1946). During the recorded phone call, Appellant's mother asked Appellant if he killed Navarro and Appellant remained silent. This was clearly inflammatory in two ways. First, it insinuates that Appellant's mother believed he was capable of murder. Second, it implies that Appellant's silence reflects his guilt. In a case such as this one, where there was no evidence that Appellant committed an act which caused Navarro's death, the recorded phone call most certainly had an effect on the jury's verdict. *See King v. State*, 953 S.W.2d at 271. For the foregoing reasons, Appellant's fourth point of error should be sustained.

**V.** ***The content of a recorded phone call between Appellant and his mother, which was improperly admitted at trial, violated Appellant's right against self-incrimination.***

Appellant's fifth point of error should be sustained because the contents of the recorded phone call between Appellant and his mother, in which Appellant's mother asks Appellant if he killed Navarro, violated his right to remain silent. The Fifth Amendment provides that "no person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. This

25

right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1 (1964). Texas Constitution article I, § 10, provides that "in all criminal prosecutions the accused shall … not be compelled to give evidence against himself." TEX. CONST. Art. I, § 10. Texas Code of Criminal Procedure Article 38.08 provides, "…the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PRO. Art. 38.08. If the complained-of remark called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed. *See Losada v. State*, 721 S.W.2d 305, 313 (Tex. Crim. App. 1986); *Angel v. State*, 627 S.W.2d 424, 426 (Tex. Crim. App. 1982); *Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981).

In this case, the question from Appellant's mother as to whether Appellant killed Navarro clearly invaded his right to remain silent. Additionally, the answer to Appellant's mother's question was information only Appellant could supply, and therefore, should never have been put before the jury. *See Losada*, 721 S.W.2d at 313; *Angel*, 627 S.W.2d at 426; *Johnson*, 611 S.W.2d at 650. Accordingly, Appellant's fifth point of error should be sustained and his conviction reversed. *See Id*.

26

## VI. *The trial court abused its discretion in denying Appellant's Motion for New Trial.*

Appellant's sixth point of error should be sustained because the trial court abused its discretion in denying Appellant's Motion for New Trial. A trial court's ruling on a Motion for New Trial is reviewed under an abuse of discretion standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

To be entitled to a new trial, appellant must show there is, in fact, new evidence, both competent and material to the case, the existence of which was unknown to appellant at the time of trial. *See Jones v. State*, 711 S.W.2d 35, 38 (Tex. Crim. App. 1986). Second, appellant must show his failure to discover such evidence before trial, or to utilize the evidence, once discovered, at the time of trial, was not a result of any lack of diligence on his part. *Id*.

At the hearing on Appellant's Motion for New Trial, it was undisputed that an investigating officer committed a *Brady*[4] violation by failing to turn over surveillance videotapes from a Walmart store which showed Appellant and Navarro shopping together the day before she disappeared. (RR10: 10-18). These tapes, admitted as Exhibits 339, 339(b), 339(c), and 341 refuted the theory presented by the State that Navarro was frightened by Appellant and was planning to leave him. (RR10: 18). Despite the arguments made by counsel that these

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

tapes would have affected the outcome of Appellant's trial, the Court denied Appellant's Motion for New Trial.   (RR10: 26).

Here, Appellant is able to show new evidence, in the form of surveillance videotapes which contradict the State's theory of their case, which is both competent and material to the case, the existence of which was unknown to appellant at the time of trial.   *See Jones*, 711 S.W.2d 35, 38 (Tex. Crim. App. 1986).   He is also able to show that his failure to discover this evidence before trial was not a result of any lack of diligence on his part because it is undisputed that a *Brady* violation occurred which deprived Appellant of this evidence.   *Id*. Because Appellant has met the standard for receiving a new trial, the trial court abused its discretion in denying Appellant's Motion for New Trial.   *Id*. Therefore, Appellant's sixth point of error should be sustained.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court reverse the judgment and sentence in this case.

Respectfully submitted,

_____"/s/" Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Brief has been mailed to the Travis County District Attorney's Office, P.O. Box 1748, Austin, Texas 7867, on February 19, 2015.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document consists of 5,812 words in compliance with Texas Rule of Appellate Procedure 9.4.

_____”/s/” Kristen Jernigan_____
Kristen Jernigan